UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------×
HARVEY BERSE,

      *Plaintiff,*                                           **17 CV 9762**

      *v.*

                                               **COMPLAINT**

DIAMOND DEALERS CLUB, INC.,

      *Defendant.*
------------------------------------------------------------------------×

      Plaintiff Harvey Berse, by his counsel, Young & Ma LLP and The Harman Firm, LLP, alleges for his Complaint against Defendant Diamond Dealers Club, Inc. (the "Club"), as follows:

## PRELIMINARY STATEMENT

      1.      For more than 20 years, Mr. Berse worked as a security guard at the Club, the largest diamond trade organization in the U.S. During Mr. Berse's employment at the Club, the Club refused to promote Mr. Berse (the oldest security guard at the Club), assigned him to less favorable job postings, and ultimately terminated his employment because of his age and his caregiving responsibilities to his disabled wife. After Mr. Berse's termination, the Club failed to provide him with a notice of his right to continued health care coverage under the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), 29 U.S.C. § 1161, and failed to pay him for his accrued vacation days and three days' salary.

      2.      Mr. Berse seeks damages and costs against the Club for discriminating against him based on his age (65 years old) by subjecting him to a hostile work environment and terminating his employment, in violation of the New York City Human Rights Law (NYCHRL), N.Y.C. Admin. Code §§ 8-101 *et seq*., and for discriminating against him based on his caregiver

status and association with a person with a disability by subjecting him to a hostile work environment and terminating his employment, in violation of the NYCHRL.

3. Mr. Berse also seeks damages and costs against the Club for failing to provide him with the required notice of his right to continued health care coverage, in violation of COBRA.

4. Mr. Berse also seeks damages and costs against the Club for: failing to pay him his wages, in violation of the New York State Labor Law (NYLL), N.Y. Lab. Law § 191; for making unlawful deductions from his paycheck, in violation of NYLL § 193; and for failing to provide notice and keep records, in violation of NYLL § 195.

## JURISDICTION AND VENUE

5. Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiff's claims arising under COBRA.

6. Pursuant to 28 U.S.C. § 1332, this Court has supplemental jurisdiction over Plaintiff's NYCHRL and NYLL claims, as these claims are so related to the claims within such original jurisdiction that they form part of the same case or controversy.

7. Pursuant to 28 U.S.C. § 1332, this Court has diversity jurisdiction over Plaintiff's claims, as the matter in controversy exceeds $75,000 and is between citizens of different states:

   a. Plaintiff Berse is a citizen of the State of New Jersey, as he is domiciled in the State of New Jersey.

   b. Upon information and belief, the Club is a citizen of the State of New York, as it is a corporation organized under the laws of the State of New York with headquarters located in the State of New York.

8. Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as a substantial part of the events giving rise to these claims occurred within this District.

## TRIAL BY JURY

9. Plaintiff respectfully requests a trial before a jury.

## PARTIES

10. Mr. Berse, at all times relevant hereto, was and is a resident of Middlesex County in the State of New Jersey.

11. Upon information and belief, at all times relevant hereto, the Club was and is a not-for-profit corporation organized under the laws of the State of New York with offices located at 50 West 47th Street, Suite 1101, New York, New York 10036 in New York County.

## STATEMENT OF FACTS

12. In and around 1996, Mr. Berse began working at the Club as a Security Guard at its 580 Fifth Avenue, New York, NY 10036 location.

13. As a security employee, Mr. Berse's job responsibilities included screening Club visitors and packages using metal detectors and X-ray devices; logging all Club visitors at the Club entrance; preparing accident and suspicious activity reports; and providing any other security and support services as needed.

14. Mr. Berse is the primary caregiver for his wife, Ronny Davidson Berse, who became disabled after sustaining serious injuries in an accident approximately 20 years ago.

15. Due to her disabilities, Ms. Berse requires assistance with daily activities, such as driving, shopping, and cleaning, uses a cane to walk, and regularly needs to attend medical appointments with various doctors and specialists.

16. Mr. Berse assists his wife with her daily activities and takes her to her doctors' appointments.

17. Mr. Berse's coworkers and supervisors at the Club were well aware of Ms. Berse's disability; Mr. Berse discussed his caregiving responsibilities at work, and his coworkers regularly inquired about his wife's health.

18. In and around December 2015, however, the Club's management began to subject Mr. Berse to discrimination because his wife is disabled and he is her primary caregiver.

19. In and around December 2015, Mr. Berse and his wife were enrolled in CareConnect health insurance through the Club's employer-sponsored insurance plan.

20. The CareConnect insurance, however, did not cover the services and providers for which Ms. Berse needed coverage, including an internist, hand doctor and surgeon, endocrinologist, gallbladder specialist, and eye doctor, none of whom accepted Mr. Berse's plan.

21. Accordingly, Mr. Berse contacted the Club to request that the Club switch him to a different health insurance plan, explaining that his current insurance did not cover his wife's essential medical treatment.

22. Upon receiving Mr. Berse's request, the Club switched his health insurance to an Oxford Liberty Silver plan without Mr. Berse's input and represented to Mr. Berse that the Club would continue to pay for his health insurance premiums, just as it did for all other employees.

23. Yet when Mr. Berse received his next paycheck in and around January 2016, the Club had deducted the premium for the new Oxford Liberty Silver health insurance plan—$78.10—from his paycheck.

24. Mr. Berse notified David Lasher, the Club's Managing Director, of the problem after he received the January 2016 paystub.

25. Mr. Lasher stated that the deduction had been an error and told Mr. Berse that he would fix the issue and reimburse Mr. Berse.

26. The problem, however, was never resolved; the Club represented that it would reimburse Mr. Berse for the insurance premium payments, yet never did so.

27. Instead, the Club continued to deduct $78.10 for the new insurance premium from each of Mr. Berse's biweekly paychecks, only stopping when the Club finally changed Mr. Berse's insurance plan yet again in September 2016 from Oxford Liberty Silver to Oxford Metro Silver.

28. Between December 2015 and September 2016, based on his belief in the Club's representations that it would reimburse him, Mr. Berse ultimately accrued $1249.60 in out-of-pocket payments for his medical insurance premiums.

29. On or about May 17, 2017, Mr. Berse took his wife to a doctor's appointment with an internist because she had gotten very ill with a fever, respiratory infection, and bronchitis and was not responding to treatment.

30. On or about June 28, 2017, shortly after Mr. Berse needed to take this time off work to care for his wife, the Club terminated Mr. Berse's 21-year employment, telling him that the Club was eliminating his position because there were not enough entrances at the Club to justify the Club's having three security employees after the Club's relocation and downsizing.

31. At the time of his termination, Mr. Berse was the longest-tenured, most experienced, and oldest of the three security guards at the Club.

32. No other security guards were terminated.

33. The Club did not explain to Mr. Berse any criteria it used to choose which employees to terminate.

34. Upon information and belief, the Club terminated Mr. Berse because of his age, caregiver status, and association with a disabled person.

35. To date, the Club still has not paid Mr. Berse his accrued vacation days for 2017.

36. Additionally, Mr. Berse worked full days on June 26, 27, and 28, 2017, but the Club has failed to pay him his salary for those days.

37. The Club also failed to provide Mr. Berse with notice of rate of pay forms and with paystubs containing all information required by the NYLL.

38. Subsequent to Mr. Berse's termination, the Club failed to send him the requisite COBRA election notice.

39. The Club was obligated to send Mr. Berse a COBRA election notice within 30 days of the termination of his employment, but did not do so.

40. To date, the Club has not sent Mr. Berse a COBRA election notice.

41. Mr. Berse and his wife were enrolled in health insurance through the Club.

42. The Club's termination of Mr. Berse's insurance and its failure to send Mr. Berse a COBRA election notice left Mr. Berse and his family members uninsured and forced Mr. Berse to pay out-of-pocket for medical expenses.

## CAUSES OF ACTION
### FIRST CAUSE OF ACTION
### Violation of COBRA

43. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 42 with the same force as though separately alleged herein.

44. COBRA requires that an employer issue an election notice to qualifying employees within 30 days after a triggering event, such as termination.

6

45. Mr. Berse and his family members were enrolled in health insurance through the Club's health insurance plan.

46. The Club terminated Mr. Berse's employment on or about June 28, 2017.

47. The Club failed to issue Mr. Berse the requisite election notice after terminating his employment.

48. As such, the Club has violated COBRA.

49. Further, COBRA requires that an employer allow employees and/or former employees a certain amount of time to elect COBRA benefits.

50. The Club failed to grant Mr. Berse the requisite period of time to elect COBRA benefits.

51. As a direct and proximate consequence of the Club's actions, Mr. Berse has suffered, and continues to suffer, substantial damages, including actual economic damages and statutory damages, all in amounts to be determined at trial.

## SECOND CAUSE OF ACTION
### Hostile Work Environment in Violation of the NYCHRL

52. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 51 with the same force as though separately alleged herein.

53. The NYCHRL prohibits an employer from discriminating against an employee on the basis of age, caregiver status, or association with a person with a disability.

54. The Club discriminated against Mr. Berse based on his age, caregiver status, and association with a person with a disability by treating him less well and failing to promote him.

55. As such, the Club has violated the NYCHRL.

56. As a direct and proximate consequence of the Club's discrimination, Mr. Berse has suffered, and continues to suffer, substantial damages, including, but not limited to, economic loss and emotional distress and suffering, all in amounts to be determined at trial.

57. The Club's discriminatory treatment of Mr. Berse amounts to willful or wanton negligence or recklessness and/or involves a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard. Accordingly, Mr. Berse is entitled to an award of punitive damages against the Club.

### THIRD CAUSE OF ACTION
### Unlawful Termination in Violation of the NYCHRL

58. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 57 with the same force as though separately alleged herein.

59. The NYCHRL prohibits an employer from discriminating against an employee on the basis of age, caregiver status, or association with a person with a disability.

60. The Club discriminated against Mr. Berse based on his age, caregiver status, and association with a person with a disability by terminating his employment.

61. As such, the Club has violated the NYCHRL.

62. As a direct and proximate consequence of the Club's discrimination, Mr. Berse has suffered, and continues to suffer, substantial damages, including, but not limited to, economic loss and emotional distress and suffering, all in amounts to be determined at trial.

63. The Club's discriminatory treatment of Mr. Berse amounts to willful or wanton negligence or recklessness and/or involves a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard. Accordingly, Mr. Berse is entitled to an award of punitive damages against the Club.

## FOURTH CAUSE OF ACTION
### Failure to Pay Wages in Violation of NYLL § 191

64. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 63 with the same force as though separately alleged herein.

65. At all times relevant to this action, Mr. Berse was employed by the Club within the meaning of the NYLL.

66. The NYLL mandates that, if an employee's employment is terminated, the employer pay the employee's wages not later than the regular pay day for the pay period during which the termination occurred.

67. The Club failed to pay Mr. Berse for three days of work, in violation of the NYLL.

68. Due to the Club's NYLL violations, Mr. Berse is entitled to recover from the Club his unpaid compensation, liquidated damages, punitive damages, reasonable attorneys' fees, costs, and interest related to the action.

## FIFTH CAUSE OF ACTION
### Unlawful Wage Deductions in Violation of NYLL § 193

69. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 68 with the same force as though separately alleged herein.

70. At all relevant times, Mr. Berse was employed by the Club within the meaning of the NYLL.

71. NYLL § 193 prohibits an employer from making any deduction from the wages of an employee unless permitted by law or by the employee.

72. The Club deducted health insurance premiums from Mr. Berse's wages without Mr. Berse's consent.

9

73. As such, the Club has violated the NYLL.

74. Due to the Club's NYLL violations, Mr. Berse is entitled to recover from the Club his unpaid compensation, liquidated damages, punitive damages, reasonable attorneys' fees, costs, and interest related to the action.

## SIXTH CAUSE OF ACTION
### Failure to Provide Notice and Keep Records in Violation of NYLL § 195

75. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 74 with the same force as though separately alleged herein.

76. At all relevant times, Mr. Berse was employed by the Club within the meaning of the NYLL.

77. NYLL § 195 mandates that employers provide certain notices to their employees and keep certain records related to wages.

78. The Club never provided Mr. Berse with appropriate notices or, upon information and belief, kept records related to wages, as mandated by the NYLL.

79. Therefore, the Club violated the NYLL's notice and record-keeping requirements.

80. Due to the Club's NYLL violations, Mr. Berse is entitled to recover from the Club $50.00 for each work day that the violations occurred or continue to occur, in addition to reasonable attorneys' fees and costs related to the action.

**REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first cause of action, damages to be determined at trial;

B. For the second cause of action, damages to be determined at trial;

C. For the third cause of action, damages to be determined at trial;

D. For the fourth cause of action, damages to be determined at trial;

E. For the fifth cause of action, damages to be determined at trial;

F. For the sixth cause of action, damages to be determined at trial; and

G. For such other and further relief as the Court deems just and proper.

Dated:   New York, New York
         December 13, 2017

By:   s/ Walker G. Harman, Jr.
      Tiffany Ma [TM-3561]
      YOUNG & MA LLP
      575 Lexington Avenue, Fourth Floor
      New York, NY 10022
      (212) 971-9773
      tma@youngandma.com

      Walker G. Harman, Jr. [WH-8044]
      Edgar M. Rivera [ER-1378]
      THE HARMAN FIRM, LLP
      220 Fifth Avenue, Suite 900
      New York, NY 10001
      (212) 425-2600
      wharman@theharmanfirm.com
      erivera@theharmanfirm.com

      *Attorneys for Plaintiff*