**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

HARVEY BERSE,

                         Plaintiff,

              -against-

DIAMOND DEALERS CLUB, INC.,

                     Defendant.

17-CV-9762 (LAK)

---

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DIAMOND DEALERS CLUB, INC.'S MOTION TO DISMISS**

Matthew A. Steinberg
*Matthew.Steinberg@akerman.com*
Rebecca A. Cox
*rebecca.cox@akerman.com*
AKERMAN LLP
666 Fifth Avenue, 21st Floor
New York, New York 10103
Tel. (212) 880-3800
Fax (212) 905-6481

ATTORNEYS FOR DEFENDANT
DIAMOND DEALERS CLUB, INC.

Dated: February 2, 2018
      New York, New York

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ........................................................................................................ i

PRELIMINARY STATEMENT ............................................................................................ 1

ALLEGATIONS OF THE COMPLAINT ............................................................................. 2

PROCEDURAL BACKGROUND .......................................................................................... 4

SUMMARY OF THE ARGUMENT ...................................................................................... 4

ARGUMENT ........................................................................................................................... 5

    I.   STANDARDS OF REVIEW ....................................................................................... 5

        A.  Motion To Dismiss. ........................................................................................... 5

        B.  Employment Discrimination. ........................................................................... 6

    II.  PLAINTIFF'S UNLAWFUL TERMINATION CLAIMS MERIT DISMISSAL. ............ 7

        A.  Plaintiff's Age Discrimination Claims Must Be Dismissed Because Plaintiff Fails To Plausibly Allege He Was Terminated Because Of His Age. ........................ 7

        B.  Plaintiff's Remaining Unlawful Termination Claims Must Be Dismissed Because Plaintiff Fails To Plausibly Allege He Was Terminated Because Of His Caregiver Status/Association With A Person With A Disability. ........................ 11

    III. PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIMS MERIT DISMISSAL. ................................................................................................................ 13

    IV. PLAINTIFF'S COBRA CLAIMS MERITS DISMISSAL. .............................................. 16

CONCLUSION ...................................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

Acosta v. City of New York,
    11 Civ. 856, 2012 WL 1506954 (S.D.N.Y. Apr. 26, 2012)....................................................14

Ahmed v. Gateway Grp. One,
    12 Civ. 0524, 2012 WL 1980386 (E.D.N.Y. June 1, 2012) ...................................................10

Ashcroft v. Iqbal,
    556 U.S. 662, 129 S.Ct. 1937 (2009)........................................................................................6

Bell Atl. Corp. v. Twombly,
    550 U.S. 544, 127 S.Ct. 1955 (2007)........................................................................................5

Bermudez v. City of N.Y.,
    783 F. Supp. 2d 560 (S.D.N.Y. 2011).....................................................................................11

Beverley v. 1115 Health & Benefits Fund,
    420 F. Supp. 2d 47 (E.D.N.Y. 2005) ........................................................................................8

Buckley v. New York,
    959 F. Supp. 2d 282 (E.D.N.Y. 2013) ......................................................................................6

Capobianco v. Sandow Media Corp.,
    11 Civ. 3162, 2012 WL 4561761 (S.D.N.Y. Sept. 29, 2012)...........................................16, 17

Chukwueze v. NYCERS,
    891 F. Supp. 2d 443 (S.D.N.Y. 2012).......................................................................................6

Colon v. Fashion Inst. of Tech. (State Univ. of New York),
    983 F. Supp. 2d 277 (S.D.N.Y. 2013)................................................................................13, 15

E.E.O.C. v. Port Auth. of New York & New Jersey,
    768 F.3d 247 (2d Cir. 2014).......................................................................................................7

Gorman v. Consol. Edison Corp.,
    488 F.3d 586 (2d Cir. 2007).......................................................................................................2

Graziadio v. Culinary Inst. of America,
    817 F.3d 415 (2d Cir. 2016).....................................................................................................11

Guzman v. Macy's Retail Holdings, Inc.,
    09 Civ. 4472, 2010 WL 1222044 (S.D.N.Y. 2010) .................................................................17

Hawana v. City of New York,
    230 F. Supp. 2d 518 (S.D.N.Y. 2002)......................................................................8

Hubicki v. Amtrak Nat'l Passenger Railroad Co.,
    808 F. Supp. 192 (E.D.N.Y. 1992) .......................................................................16

Lawless v. TWC Media Sols., Inc.,
    487 F. App'x 613 (2d Cir. 2012) ..........................................................................14

Lee v. Sony BMG Music Entertainment, Inc.,
    07 Civ. 6733, 2010 WL 743948 (S.D.N.Y. Mar. 3, 2010) ..................................7, 8

Lennert-Gonzalez v. Delta Airlines, Inc.,
    11 Civ. 1459, 2013 WL 754710 (S.D.N.Y. Feb. 28, 2013)..................................15

Littlejohn v. City of New York,
    795 F.3d 297 (2d Cir. 2015)....................................................................................6

Malcolm v. Honeoye Falls Lima Cent. Sch. Dist,
    777 F. Supp. 2d 484 (W.D.N.Y. 2011), aff'd 483 F. App'x 660 (2d Cir. 2012) ....17

Margherita v. FedEx Exp.,
    511 Fed. Appx. 71 (2d Cir. 2013)..........................................................................14

Mathew v. N. Shore-Long Island Jewish Health Sys., Inc.,
    582 Fed. Appx. 70 (2d Cir. 2014)............................................................................7

McDonnell Douglas Corp. v. Green,
    411 U.S. 792, 93 S.Ct. 1817 (1973)........................................................................6

Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,
    715 F.3d 102 (2d Cir. 2013)....................................................................................7

Neishlos v. City of New York,
    00 Civ. 914, 2003 WL 22480043 (S.D.N.Y. Nov. 3, 2003) ................................10

Ortiz v. Standard & Poor's,
    10 Civ. 8490, 2011 WL 4056901 (S.D.N.Y. Aug. 29, 2011) .................................6

Press v. Concord Mortg. Corp.,
    08 Civ. 9497, 2009 WL 6758998 (N.D.N.Y. 2009) .............................................17

Rivera-Powell v. New York City Bd. of Elections,
    470 F.3d 458 (2d Cir. 2006)....................................................................................7

Rozenfeld v. Dep't of Design & Const. of N.Y.C.,
    875 F. Supp. 2d 189 (E.D.N.Y. 2012) ..................................................................14

Russo v. New York Pres. Hosp.,
    972 F. Supp. 2d 429 (E.D.N.Y. 2013) ..................................................................15

Terry v. Ashcroft,
    336 F.3d 128 (2d Cir. 2003)..............................................................................7

Treanor v. Metro. Transp. Auth.,
    414 F. Supp. 2d 297 (S.D.N.Y. 2005)..................................................................16

Tsang-Adler v. City of New York,
    12 Civ. 394, 2013 WL 1563337 (E.D.N.Y. Apr. 12, 2013)......................................10

**Statutes**

29 U.S.C. § 1132(c)(3)..........................................................................................16

29 U.S.C. § 1161..................................................................................................16

New York City Human Rights Law........................................................................4

New York Labor Law ...........................................................................................2

New York Labor Law ...........................................................................................5

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ................................................1, 2, 5, 6, 9, 11

43995156;1

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Diamond Dealers Club, Inc. ("DDC") submits this Memorandum of Law in support of its Motion to Dismiss ("Motion") Counts I through III[1] of Plaintiff Harvey Berse's ("Plaintiff" or "Berse") Complaint. Specifically, DDC seeks to dismiss Plaintiff's claims of unlawful termination and hostile work environment on the basis of age, caregiver status, and association with a person with a disability, as well as Plaintiff's Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") notice claim.

## PRELIMINARY STATEMENT

In 1996, when Plaintiff was already forty-five (45) years old, DDC hired Plaintiff as a Security Guard. Shortly following Plaintiff's hire, a serious accident rendered Plaintiff's wife disabled, requiring Plaintiff to become her caregiver. For the next twenty (20) years, Plaintiff remained employed by DDC as a Security Guard while also serving as his wife's caregiver (which included assisting her with her daily activities and regularly taking her to doctors' appointments). In June 2017, because a move to a smaller location resulted in DDC requiring less Security Guards, DDC eliminated Plaintiff's position.

In response to this job elimination, Plaintiff filed this lawsuit alleging unlawful termination and hostile work environment on the basis of age, caregiver status, and association with a person with a disability. As shown below, Plaintiff's Complaint offers absolutely no explanation (much less a "plausible" explanation) for why, almost twenty (20) years after DDC hired Plaintiff and almost twenty (20) years after Plaintiff became a caregiver/associated with a person with a disability, DDC suddenly began to embark on a pattern of intentionally discriminating against Plaintiff, and ultimately terminating Plaintiff's employment, based upon

---

[1] DDC reserves all rights related to answering and defending against Plaintiff's remaining claims, Counts IV through VI.

his age, caregiver status, and association with a person with a disability (the gravamen of Plaintiff's Complaint).  The Complaint similarly offers no plausible explanation why, if DDC were intent on harassing or discharging Plaintiff for these discriminatory reasons, it took the Company nearly two (2) decades to do so.  Instead, Plaintiff's Complaint is riddled with conclusory assertions and rank speculation about why Plaintiff self-servingly believes (without any factual support whatsoever) that DDC unlawfully failed to promote him, assigned him less favorable job postings, changed the health benefits for which Plaintiff (and his wife) were eligible during Plaintiff's employment, and, ultimately, terminated his employment.  Plaintiff's meager allegations fall well short of what is required in this Circuit to survive a Rule 12 dismissal motion.  Accordingly, for all of the reasons discussed below, the Court should dismiss Counts I (COBRA notice claim), II (hostile work environment claim), and III (unlawful termination claim) of Plaintiff's Complaint as a matter of law.

## <u>ALLEGATIONS OF THE COMPLAINT</u>[2]

DDC is a not-for-profit diamond trade organization located in New York, New York.  (<u>See</u> Affidavit of Rebecca A. Cox, Esq., Exhibit "A," Compl. ¶¶ 1, 11.)

In or around 1996, DDC hired Plaintiff as a Security Guard.  (<u>Id</u>. at ¶ 12.)  As a Security Guard, Plaintiff's responsibilities included logging all DDC visitors at DDC's entrance, preparing accident and suspicious activity reports, and providing any other security and support services as needed.  (<u>Id</u>. at ¶ 13.)

At the time of Plaintiff's hire, Plaintiff was approximately forty-five (45) years old.  (<u>Id</u>. at ¶¶ 1, 2.)

---

[2]     While the Court must accept the factual allegations in the Complaint as true for purposes of this motion, <u>see</u> <u>Gorman v. Consol. Edison Corp.</u>, 488 F.3d 586, 591-92 (2d Cir. 2007), DDC categorically denies Plaintiff's allegations of discrimination, COBRA violations, and New York Labor Law violations.

Shortly after or around Plaintiff's hire, Plaintiff's wife became disabled in an accident. (Id. at ¶¶ 12, 14.) Since that time, Plaintiff has been the primary caretaker for his wife. (Id. at ¶ 14.) Due to her disabilities, Plaintiff's wife requires assistance with daily activities. (Id. at ¶ 15.) Plaintiff's wife's condition also requires her to "regularly" attend medical appointments with various doctors and specialists. (Id.) Over the past twenty years, Plaintiff has taken his wife to these doctors' appointments. (Id. at ¶ 16.) Plaintiff's coworkers and supervisors at DDC were "well aware" of his wife's disability, as Plaintiff discussed his caregiving responsibilities at work and his coworkers regularly inquired about his wife's health. (Id. at ¶ 17.)

Plaintiff alleges that, at unspecified times, DDC "refused to promote [him]" and "assigned him to less favorable job postings." (Id. at ¶ 1.) Plaintiff provides no further details concerning this alleged failure to promote or unfavorable treatment. (Id.)

At times relevant to the Complaint, DDC offered employees like Plaintiff, and their dependents, health insurance benefits. (Id. at ¶¶ 19-27.) In or around December 2015, Plaintiff and his wife were enrolled in CareConnect health insurance through DDC's employer-sponsored insurance plan. (Id. at ¶ 19.) According to Plaintiff, the CareConnect insurance did not cover many of Plaintiff's wife's specialist medical providers. (Id. at ¶ 20.) For this reason, *Plaintiff requested* DDC change his health insurance plan. (Id. at ¶ 21.) In or around January 2016, *DDC granted Plaintiff's request*, moving Plaintiff to an Oxford Liberty Silver plan. (Id. at ¶ 22.)

Plaintiff claims that DDC represented to him that it would continue to pay for his health insurance premiums under the Oxford Liberty Silver plan (as it previously had under the CareConnect plan). (Id. at ¶¶ 22-23.) Plaintiff claims that DDC did not pay his new insurance premiums and that: (i) for nine (9) months, he incurred $78.10 per month in deductions from his

3

paycheck for the new plan premiums; (ii) Plaintiff notified the DDC Managing Director of these deductions; and (iii) the Managing Director stated that DDC would reimburse Plaintiff for the premiums.  (Id. at ¶¶ 24-25.)  According to Plaintiff, however, DDC did not, in fact, reimburse him for the premiums.  (Id. at ¶ 26.)  There are no factual allegations in Plaintiff's Complaint that DDC undertook this action because of a protected characteristic.

On or about June 28, 2017, DDC eliminated Plaintiff's position, resulting in his termination.  (Id. at ¶ 30).  Plaintiff was sixty-five (65) years old.  (Id. at ¶¶ 2, 30.)  At the time of his termination, DDC informed Plaintiff that it was eliminating his position because, following DDC's relocation and downsizing, there were "not enough entrances at the Club to justify the Club's having three security employees."  (Id.)  Plaintiff claims that, at the time of his termination, he was the "oldest" of the three Security Guards at DDC and that no other Security Guards were terminated.  (Id. at ¶¶ 31-32.)  Plaintiff further alleges that DDC was obligated to, but did not, send him COBRA election notices, resulting in out-of-pocket medical expenses.  (Id. at ¶¶ 38-42.)

## PROCEDURAL BACKGROUND

Plaintiff filed the instant Complaint on December 13, 2017.  Plaintiff does not allege that, prior to filing the instant Complaint, he filed any administrative charge or other condition precedent.

## SUMMARY OF THE ARGUMENT

In his Complaint, Plaintiff alleges that DDC subjected him to unlawful termination and hostile work environment on the basis of his age, caregiver status, and association with a person with a disability, in violation of the New York City Human Rights Law

("NYCHRL") (Counts II and III), and that DDC did not provide him with a notice of his right to continued health care coverage under COBRA (Count I).[3]

As described in greater detail in Sections II and III *infra*, Plaintiff's claims fail for the following reasons:

- Plaintiff's age, caregiver status, and association with a person with a disability discrimination claims fail because the Complaint does not plausibly allege that DDC terminated Plaintiff's employment *because of* these protected characteristics. Notably, Plaintiff fails to allege or offer any facts suggesting any of DDC's challenged personal actions were motivated by any form of intentional discrimination.

- Plaintiff's hostile work environment claims fail because they: (i) lack the necessary causal connection between any action taken toward Plaintiff and any protected characteristic; and (ii) are, at best, nothing more than non-actionable "petty slights or trivial inconveniences."

- Plaintiff's COBRA notice claim fails because Plaintiff fails to allege that DDC: (i) had 20 or more employees; or (ii) acted as its own plan administrator.

For all these reasons, Counts I through III must be dismissed.

## ARGUMENT

## I.    STANDARDS OF REVIEW.

### A.    Motion To Dismiss.

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint that fails to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead sufficient factual allegations in the complaint to "state a claim [for] relief that is plausible on its face." See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1960 (2007). The facts pled in the complaint "must be enough to raise a right to relief above the speculative level." Id. at 555. Although all

---

[3]    Plaintiff also claims that DDC failed to pay him for three days of work, as well as failed to provide him with required notices and keep certain records under the New York Labor Law ("NYLL") (Counts IV through VI).

allegations contained in the complaint are assumed true, this principle is "inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1945-50, 1960 (2009).

        **B.**      **Employment Discrimination.**

        Claims of employment discrimination are analyzed pursuant to the tripartite burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817 (1973).  See Littlejohn v. City of New York, 795 F.3d 297, 307-08 (2d Cir. 2015). Under this framework, the burden initially falls upon the plaintiff to establish a *prima facie* case of discrimination or retaliation.  Id.  Though a plaintiff need not establish a *prima facie* case at the pleading stage in employment discrimination cases, the claim must still be "*facially plausible and must give fair notice to the defendants of the basis for the claim.*"  Ortiz v. Standard & Poor's, 10 Civ. 8490, 2011 WL 4056901, at *2 (S.D.N.Y. Aug. 29, 2011) (emphasis in original) (quoting Barbosa v. Continuum Health Partners, Inc., 716 F. Supp. 2d 210, 215 (S.D.N.Y. 2010)).  See also Buckley v. New York, 959 F. Supp. 2d 282, 296 (E.D.N.Y. 2013) (noting, to survive Rule 12(b)(6) motion, cause of action for employment discrimination must allege facts "sufficient to plausibly suggest [defendant's] discriminatory state of mind" and "conclusory allegations are not entitled to the presumption of truth"); Chukwueze v. NYCERS, 891 F. Supp. 2d 443, 450 (S.D.N.Y. 2012) ("courts consider [elements of *prima facie* case under McDonnell Douglas framework] in determining whether there is sufficient factual matter in the complaint which, if true, gives Defendant a fair notice of Plaintiff's claim and the grounds on which it rests").

        The Second Circuit has noted that "while a discrimination complaint need not allege facts establishing each element of a *prima facie* case of discrimination to survive a motion

to dismiss, *it must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed.*  See E.E.O.C. v. Port Auth. of New York & New Jersey, 768 F.3d 247, 254 (2d Cir. 2014) (internal citations and quotation marks omitted) (emphasis added).

## II.   PLAINTIFF'S UNLAWFUL TERMINATION CLAIMS MERIT DISMISSAL.

### A.   Plaintiff's Age Discrimination Claims Must Be Dismissed Because Plaintiff Fails To Plausibly Allege He Was Terminated Because Of His Age.

Under the NYCHRL, the plaintiff bears the burden of pleading a *prima facie* claim of discrimination by showing that he: (1) is a member of a protected class; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) that the action occurred under circumstances giving rise to an inference of discriminatory conduct. See Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003).   While courts must construe the NYCHRL's provisions "broadly in favor of discrimination plaintiffs," Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 109 (2d Cir. 2013), even under this more liberal pleading standard, a plaintiff must plausibly allege that he was subjected to unequal treatment *because of* his protected characteristic.  See Mathew v. N. Shore-Long Island Jewish Health Sys., Inc., 582 Fed. Appx. 70, 71 (2d Cir. 2014) (disability discrimination); Mihalik, 715 F.3d at 110 (gender-based discrimination).   "[D]istrict courts must be mindful that the NYCHRL is not a general civility code ... [and] [t]he plaintiff still bears the burden of showing that the conduct is caused by a discriminatory motive."  See Mihalik, 715 F.3d at 110.

As to whether a plaintiff has demonstrated circumstances giving rise to an inference of discriminatory conduct, courts in this circuit require *more than mere perceptions and assumptions*.  For example, in Lee v. Sony BMG Music Entertainment, Inc., the Court dismissed a plaintiff's NYCHRL discrimination claim, finding plaintiff's "feelings and

perceptions" were not evidence of discrimination.  See Lee v. Sony BMG Music Entertainment, Inc., 07 Civ. 6733, 2010 WL 743948, at *9 (S.D.N.Y. Mar. 3, 2010) (citing Bickerstaff v. Vassar Coll., 196 F.3d 435, 456 (2d Cir. 1999)).  For another example, in Hawana v. City of New York, the Court observed that a plaintiff's personal conclusory assumptions were insufficient to support an inference of discriminatory motive.  See Hawana v. City of New York, 230 F. Supp. 2d 518, 528 (S.D.N.Y. 2002) (internal quotations omitted).

Where courts in this Circuit have denied dismissal motions in NYCHRL discrimination cases, they have done so only where, unlike in the present case, the plaintiff can allege more than mere conclusory statements and speculation.  See Beverley v. 1115 Health & Benefits Fund, 420 F. Supp. 2d 47, 56 (E.D.N.Y. 2005) (noting claims will be sustained where they allege that employer specifically criticized plaintiff's performance in ethnically degrading terms, made invidious comments about others in employee's protected group, or treated employees not in the protected group more favorably).  Illustratively, in Szewczyk v. City of New York, the court found that the plaintiff's allegation of differential treatment *plus* questions about her age and her ability to work with younger candidates during her interview were sufficient to allege a motive to discriminate based on age under the NYCHRL, for the purposes of a Rule 12 motion.  See Szewczyk v. City of New York, 15 Civ. 918, 2016 WL 3920216, at *12 (E.D.N.Y. July 14, 2016).

In this case, the only allegations Plaintiff makes concerning his age are that: (i) DDC hired him at the age of forty-five (45) (Compl. ¶¶ 1, 2); (ii) during his employment, at unspecified times, DDC "refused to promote [him]" and "assigned him to less favorable job postings" (id. at ¶ 1); (iii) at the age of sixty-five (65), DDC eliminated his position (id. at ¶¶ 2, 30); and (iv) when his position was eliminated, Plaintiff was the "oldest" of the three (3) Security

8

Guards (id. at ¶¶ 31-32).   Significantly, however, the Complaint fails to allege *any facts whatsoever* concerning the alleged failure to promote Plaintiff during his employment (including whether there were any open positions at DDC for which Plaintiff was qualified, when such events occurred, or how such a decision was related to Plaintiff's protected status) or the alleged assigning of less favorable job postings.  As to Plaintiff's termination, the Complaint also fails to allege (let alone plausibly allege) how DDC's decision to terminate Plaintiff's employment was made "because of" his age.  To the contrary, the Complaint on its face articulates DDC's wholly legitimate non-discriminatory reason for terminating Plaintiff's employment – namely, that DDC eliminated Plaintiff's position because, after DDC's relocation and downsizing, there were not enough entrances at DDC to justify having three security employees (Compl. ¶ 30).  These allegations do not meet Plaintiff's burden of showing a discriminatory motive, a burden that is essential to establish an inference of discrimination.

Additionally, Plaintiff fails to allege that anyone at DDC ever made any discriminatory comments regarding his or others' ages or otherwise harbored any type of discriminatory animus towards Plaintiff.  To the contrary, Plaintiff's own Complaint highlights that, at all times throughout his employment, DDC treated Plaintiff in a good-faith and non-discriminatory manner.  Indeed, DDC hired Plaintiff at the age of forty-five (45) and employed him for twenty (20) years (id. at ¶¶ 1, 2).

Lastly, Plaintiff fails to proffer any comparator information sufficient to push his claims beyond the Rule 12 threshold.  Specifically, Plaintiff fails to allege the ages of the other Security Guards or whether these alleged comparators were significantly younger than Plaintiff was, eliminating any argument of more favorable treatment of employees outside Plaintiff's protected group.  Plaintiff also fails to allege that his performance was somehow superior to the

other Security Guards or other facts that would suggest that the reason for Plaintiff's termination was anything other than the reason Plaintiff himself identifies in his Complaint –that DDC's move to a smaller location with less doors caused DDC to require less Security Guards.  Finally, Plaintiff offers absolutely no explanation (much less a "plausible" explanation) for why, almost twenty (20) years after he was hired (at the age of forty-five (45)), DDC suddenly began discriminating against Plaintiff based upon his age.

In sum, the only "evidence" to which Plaintiff cites in support of his age discrimination claim is his status as the "oldest" of the three (3) Security Guards.  However, a plaintiff's status as "the only" member of his protected class at defendant-employer – absent something additional suggesting that this was more than mere "coincidence" –  is insufficient to render a discrimination claim "plausible" as opposed to merely "possible."  See Neishlos v. City of New York, 00 Civ. 914, 2003 WL 22480043, at *7 (S.D.N.Y. Nov. 3, 2003) ("[plaintiff] points out that he was the only Criminalist of Russian Jewish descent, but has presented no evidence to show that this was anything but coincidence . . . An inference of discrimination from this bald assertion would be unreasonable and cannot be made").  See also Tsang-Adler v. City of New York, 12 Civ. 394, 2013 WL 1563337, at *3 (E.D.N.Y. Apr. 12, 2013) (granting motion to dismiss where only allegation in support of plaintiff's argument that she suffered illegal discrimination was that she was the only employee of Asian or Chinese descent); Ahmed v. Gateway Grp. One, 12 Civ. 0524, 2012 WL 1980386, at *2 (E.D.N.Y. June 1, 2012) (granting motion to dismiss where race and sex discrimination claims premised on one fact: that plaintiff was only Bangladeshi woman working in her position for the employer).  Indeed, were that allegation sufficient, plaintiffs in under-represented protected classes could plausibly state a claim for discrimination *any time they were terminated*.  Courts in this Circuit have not adopted

such a far-reaching and misguided rule.  See, e.g., Ahmed, 2012 WL 1980386, at *2 ("Of course

the law does not require employers to hire a token employee from each ethnicity group present in

the employer's community. . . . In a city as diverse as Queens, no meaning can be drawn from

the fact that [defendant] has hired only one Bangladeshi woman").

      Accordingly, Plaintiff's claim that DDC terminated his employment because of

his age cannot survive the instant motion.

> **B.**    **Plaintiff's Remaining Unlawful Termination Claims Must Be Dismissed Because Plaintiff Fails To Plausibly Allege He Was Terminated Because Of His Caregiver Status/Association With A Person With A Disability.**

      As with his age discrimination claim, Plaintiff has failed to pass the threshold of

Rule 12(b)(6) by pleading factual allegations that give rise to a plausible inference of

discrimination.[4]

      Aside from conclusory and otherwise insufficient allegations, the Complaint

offers nothing to establish any connection between Plaintiff's caregiver status/association with a

person with a disability and DDC's decision to eliminate his position.  See Bermudez v. City of

N.Y., 783 F. Supp. 2d 560, 58 (S.D.N.Y. 2011) (noting plaintiff's claim failed where it was

"nothing more than the recitation of a false syllogism: (1) 1 am (insert name of a protected

---

[4] While the available case law concerning the standards for assessing a NYCHRL claim for discrimination on the basis of caregiver status/association with a person with a disability is sparse, in Graziadio v. Culinary Institute of America, the Second Circuit recently held that, to sustain an "associational discrimination" claim under federal law, a plaintiff must first make out a *prima facie* case by establishing: 1) that she was qualified for the job at the time of an adverse employment action; 2) that she was subjected to adverse employment action; 3) that she was known at the time to have a relative or associate with a disability; and 4) that the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision.  See Graziadio v. Culinary Inst. of America, 817 F.3d 415, 432–33 (2d Cir. 2016). Notably, in that case, the Second Circuit opined that there are only three circumstances that would give rise to a claim of associational discrimination: "(1) 'expense,' in which an employee suffers adverse action because of his association with a disabled individual covered by the employer's insurance, which the employer believes will be costly; (2) 'disability by association,' in which the employer fears that the employee may contract or is genetically predisposed to develop the disability of the person with whom he is associated; and (3) 'distraction,' in which the employer fears that the employee will be inattentive at work due to the disability of the disabled person."  See id. Just as in Graziadio, *not one of these three circumstances is present here*.  See id. (concluding that Graziadio's showing that her employer feared she would miss work because of her associational status did not satisfy any of these three circumstances and affirming dismissal of Graziadio's claim in this basis).

class); (2) something bad happened to me at work; (3) therefore, it happened because I am (insert name of protected class)"); <u>Szewczyk</u>, 2016 WL 3920216, at *12 (dismissing conclusory NYCHRL claims of discrimination).

   In support of his claim, Plaintiff states: (i) shortly after or around Plaintiff's hire in 1996, Plaintiff's wife became disabled in an accident (Compl. ¶¶ 12, 14); (ii) since that time, Plaintiff has been the primary caretaker for his wife, taking her to her "regularly" occurring doctors' appointments (including a May 17, 2017 appointment) and assisting her with her daily activities (<u>id</u>. at ¶¶ 12, 14-16, 27); (iii) Plaintiff's coworkers and supervisors at DDC were "well aware" of his wife's disability, as Plaintiff discussed his caregiving responsibilities at work and his coworkers regularly inquired about his wife's health (<u>id</u>. at ¶ 17); (iv) upon a report by Plaintiff that DDC's current plan did not cover his wife's specialist doctors, DDC changed Plaintiff's health benefits provider (although, incorrectly deducting related premiums for nine (9) months) (<u>id</u>. at ¶¶ 20-27); (v) during his employment, at unspecified times, DDC "refused to promote [him]" and "assigned him to less favorable job postings" (<u>id</u>. at ¶ 1); and, (vi) in June 2017, DDC eliminated Plaintiff's position (<u>id</u>. at ¶ 30).

   These allegations fail to show any nexus between Plaintiff's protected characteristics and any actions taken by DDC.  The Complaint does not state how DDC's decisions to change its health plan and to terminate Plaintiff's employment were made "because of" a protected characteristic.  To the contrary, the Complaint specifically offers other, non-discriminatory explanations for the challenged behavior – namely, (i) that DDC changed its health insurance offering *upon a request from Plaintiff* because the prior insurance did not cover

his wife's essential medical treatment;[5] and (ii) that DDC eliminated Plaintiff's position because, after DDC's relocation and downsizing, there were not enough entrances at DDC to justify having three security employees.  In addition, the Complaint fails to allege any facts whatsoever concerning the alleged failure to promote Plaintiff during his employment and alleged assigning of less favorable job postings.  Most notably and egregiously, Plaintiff also provides absolutely no explanation (much less a "plausible" explanation) for why, almost twenty (20) years after he became a caregiver/associated with a person with a disability, DDC began discriminating against Plaintiff based upon his caregiver status/association with a person with a disability (particularly, when Plaintiff had taken his wife to doctor's appointments "regularly" for almost twenty (20) years and openly discussed her health and his caregiver status at work (id. at ¶¶ 12, 14-17)).  As such, Plaintiff's claims of discrimination based caregiver status/association with a person with a disability should be dismissed.

## III.   PLAINTIFF'S   HOSTILE   WORK   ENVIRONMENT   CLAIMS   MERIT DISMISSAL.

Nor can the Complaint succeed on a hostile work environment theory.  Not only has Plaintiff failed to raise the necessary causal inference (*see supra*), but also Plaintiff has not alleged anything that resembles a hostile work environment.

The NYCHRL provides employers with an affirmative defense to claims of hostile work environment under which "if the plaintiff establishes that she was treated less well because of her [protected characteristic], defendants may assert 'an affirmative defense whereby [they] can still avoid liability if they prove that the conduct complained of consists of nothing more than what a reasonable victim of discrimination would consider petty slights and trivial

---

[5]      These December 2015 through September 2016 health insurance allegations are completely disconnected in both timing and context from Plaintiff's June 2017 layoff.  Moreover, a plain reading of these allegations, if anything, demonstrates DDC's willingness to help Plaintiff, not harm him.

inconveniences.'"  See Colon v. Fashion Inst. of Tech. (State Univ. of New York), 983 F. Supp. 2d 277, 292 (S.D.N.Y. 2013) (citing Mihalik, 715 F.3d at 110-11).  To wit, a plaintiff must still establish that he suffered a hostile work environment *because of* his membership in a protected class.  See, e.g., Margherita v. FedEx Exp., 511 Fed. Appx. 71, 72 (2d Cir. 2013) (finding that there was no evidence that plaintiff suffered a hostile work environment because of his protected status "even under the broad and liberal construction of the NYCHRL"); Rozenfeld v. Dep't of Design & Const. of N.Y.C., 875 F. Supp. 2d 189, 209–10 (E.D.N.Y. 2012) (holding that the few instances alleged by plaintiff did not demonstrate animus and were too minor to meet NYCHRL's hostile work environment standard); Acosta v. City of New York, 11 Civ. 856, 2012 WL 1506954, at *6 (S.D.N.Y. Apr. 26, 2012) ("Plaintiff's NYCHRL employment discrimination claim fails under . . . Twombly/Iqbal for the same reason as its federal and state counterparts – i.e., the absence of allegations connecting the purported adverse employment actions to plaintiff's race [plaintiff alleged merely that he was Hispanic and the individual defendants were white]. . . . Accordingly, even under the NYCHRL's liberal construction, plaintiff's employment discrimination claim under the NYCHRL is dismissed."); Lawless v. TWC Media Sols., Inc., 487 F. App'x 613, 618 (2d Cir. 2012) (dismissing NYCHRL claims along with federal discrimination claims and commenting, "[E]ven under the broad and liberal construction of the NYCHRL, we find them to be without merit").

Here, Plaintiff fails to allege DDC's alleged conduct occurred *because of his protected characteristics.*  In support of his hostile work environment claim, Plaintiff avers: (i) during his employment, at unspecified times, DDC "refused to promote [him]" and "assigned him to less favorable job postings" (Compl. ¶ 1); and (ii) upon a report by Plaintiff that DDC's current plan did not cover his wife's specialist doctors, DDC changed Plaintiff's health benefits

provider and incorrectly deducted related premiums for nine (9) months (id. at ¶¶ 20-27). Plaintiff offers absolutely no connection between these alleged acts and his protected characteristics.

Courts have dismissed hostile work environment claims with similar causal deficiencies.  For example, in Colon, the court dismissed a plaintiff's NYCHRL hostile work environment claim, despite allegations by the employee that she was subject to intense scrutiny and micro-management on a daily basis and was reprimanded for the same conduct (placing calls and texts while at work) for which employees outside her protected class engaged but were not reprimanded because there were no facts linking these actions to the plaintiff's protected characteristics.  See Colon, 983 F. Supp. 2d at 292.  For another example, in Lennert-Gonzalez v. Delta Airlines, Inc., the court dismissed a plaintiff's NYCHRL hostile work environment claim, finding the plaintiff failed to show that any incidents were based on animus directed towards plaintiff's protected class rather than upon "[p]ersonal animus").  See Lennert-Gonzalez v. Delta Airlines, Inc., 11 Civ. 1459, 2013 WL 754710, at *8 (S.D.N.Y. Feb. 28, 2013).  There is similarly no causal inference alleged in this case.

Moreover, Plaintiff has not met his burden of alleging conduct that amounts to more than petty slights and trivial inconveniences.  See Colon, 983 F. Supp. 2d at 292 (noting plaintiff's supervisor "may have been an 'overbearing or obnoxious boss,' but even under the more lenient NYCHRL standard, these actions do not rise above the level of 'petty slights and trivial inconveniences'"); Russo v. New York Pres. Hosp., 972 F. Supp. 2d 429, 451-53 (E.D.N.Y. 2013) (plaintiff's allegations that supervisor made her feel uncomfortable on two occasions by brushing against her and trapping her with his legs were "de minimus" and did not rise to more than "petty slights and trivial inconveniences").

Accordingly, regardless of the liberalized NYCHRL standard, there is no evidence in this case from which to infer harassment.

## IV.    PLAINTIFF'S COBRA CLAIMS MERITS DISMISSAL.

Plaintiff's claim that DDC is liable for failing to properly notify him of his COBRA election rights is defective because: (i) Plaintiff fails to allege DDC employs 20 or more employees; and (ii) Plaintiff fails to name the plan administrator as a defendant in this action or allege that DDC acted as the plan administrator as to Plaintiff's benefits.

COBRA provides covered employees who have employment-related group health insurance coverage the opportunity to elect continuation of coverage under the plan in the event of a qualifying event, including the termination of employment.  See 29 U.S.C. § 1161; Hubicki v. Amtrak Nat'l Passenger Railroad Co., 808 F. Supp. 192, 196 (E.D.N.Y. 1992).  COBRA only applies to employers with twenty (20) or more employees.  See 29 U.S.C. § 1161(b).  Under COBRA, when a covered employee is terminated, an employer is required to notify the plan administrator of the termination within thirty (30) days of the termination, and the plan administrator then has fourteen (14) days to provide the COBRA notice to the terminated employee.  See Treanor v. Metro. Transp. Auth., 414 F. Supp. 2d 297, 304 (S.D.N.Y. 2005) (citing 29 U.S.C. § 1166(a)(2)).  While statutory damages are available for failure to comply with COBRA's notice provisions, they are available only against the actual plan administrator, whether that be the plan administrator itself or an employer who acts as a plan administrator. See 29 U.S.C. § 1132(c)(3); see also Capobianco v. Sandow Media Corp., 11 CIV. 3162, 2012 WL 4561761, at *6-7 (S.D.N.Y. Sept. 29, 2012) (citing Colodney v. Continuum Health Partners, Inc., 03 Civ. 7276, 2004 WL 829158, at *12 (S.D.N.Y. Apr. 15, 2004)).

Primarily, Plaintiff's COBRA claim fails because Plaintiff does not allege that DDC has the requisite number of employees to be subject to the statute.  Courts in this

jurisdiction have regularly dismissed COBRA claims with similar pleading deficiencies.  For example, in <u>Danser v. Bagir Int'l, Inc.</u>, the court found that the plaintiff failed to state a claim under COBRA because the complaint did not allege that the employer had the requisite number of employees.  <u>See</u> <u>Danser</u>, 12 Civ. 5102, 2013 WL 5220902, at *2 (S.D.N.Y. Sept. 17, 2013), aff'd 571 F. App'x 54 (2d Cir. 2014).  Here, Plaintiff does not claim that DDC has 20 or more employees.  In fact, Plaintiff's Complaint references only four (4) other employees of DDC. (Compl. ¶¶ 17, 24, 31.)  As such, Plaintiff's COBRA claim must be dismissed.

Plaintiff's COBRA claim also fails because Plaintiff did not include the plan administrator as a defendant in this action and does not allege that DDC acted as its own plan administrator.  To successfully plead a COBRA notice-upon-termination violation, a plaintiff must name the plan administrator as a defendant or allege the employer acted as the plan administrator.  <u>See, e.g.</u>, <u>Malcolm v. Honeoye Falls Lima Cent. Sch. Dist</u>, 777 F. Supp. 2d 484, 487 (W.D.N.Y. 2011), aff'd 483 F. App'x 660 (2d Cir. 2012); <u>Guzman v. Macy's Retail Holdings, Inc.</u>, 09 Civ. 4472, 2010 WL 1222044 at *8-9 (S.D.N.Y. 2010); <u>Press v. Concord Mortg. Corp.</u>, 08 Civ. 9497, 2009 WL 6758998 at *6 n. 6 (N.D.N.Y. 2009).  For example, in <u>Gill v. ACACIA Network</u>, the court dismissed COBRA notice claims against a former employer because the plaintiffs failed to allege that the corporate defendant was the plan administrator. <u>See</u> <u>Gill</u>, 13 Civ. 9088, 2015 WL 1254774, at *4 (S.D.N.Y. Mar. 18, 2015).  For another example, in <u>Malcolm</u>, the court dismissed a claim against a former employer which alleged that the plaintiff was not properly notified of her election rights and was harmed thereby, finding the plaintiff failed to name the plan administrator as a defendant or to allege that the employer acted as the plan administrator.  <u>See</u> <u>Malcolm</u>, 777 F. Supp. 2d at 487.  <u>See also</u> <u>Capobianco v. Sandow Media Corp.</u>, 11 Civ. 3162, 2012 WL 4561761, at *7 (S.D.N.Y. Sept. 29, 2012)

(dismissing plaintiff's COBRA notice claim because the plaintiff did not allege the employer was a plan administrator or name the plan administrator as a defendant).  Plaintiff, here, has failed to allege DDC was the plan administrator of its health insurance plan.  Plaintiff has also failed to name a plan administrator as a defendant in this action.

As such, Plaintiff's COBRA claim must be dismissed.

## CONCLUSION

WHEREFORE, Defendant, respectfully requests this Court enter an Order: (1) dismissing Counts I, II, and III of Plaintiff's Complaint; and (2) awarding any further relief that it deems just and reasonable.

Dated: February 2, 2018
      New York, New York

Respectfully submitted,

AKERMAN LLP
666 Fifth Avenue
New York, New York 10103
(212) 880-3800
matthew.steinberg@akerman.com
rebecca.cox@akerman.com

By:    /s/ Matthew A. Steinberg
       Matthew A. Steinberg
       Rebecca A. Cox

ATTORNEYS FOR DEFENDANT DIAMOND
DEALERS CLUB